IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTOPHER GERKEN, #M12556, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-00998-RJD |
| | ) | |
| ANTHONY WILLS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**[1]

This matter comes before the Court on the Motion for Summary Judgment on the Issue of Exhaustion (Doc. 62) filed by Zachary McClanahan, Carrie Morris, and Anthony Wills, and later joined by Dakota Brauninger, Erin Nicholson, and Mary Wilson. For the reasons explained below, the motion is **GRANTED in part and DENIED in part**.

**Background**

On May 19, 2025, Plaintiff Christopher Gerken, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Lawrence Correctional Center (Doc. 20), brought this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center ("Menard"). (Doc. 1). After the threshold review (Doc. 10) and order on substitution of parties (Docs. 36 and 37), Gerken proceeded on the following claims:

**Claim 1:** **Eighth Amendment claim against Defendants Anthony Wills and Zachary McClanahan for failing to address Plaintiff's lack of recreation or out-of-cell time from August of 2024 [through] December of 2024;**

[1] This case has been assigned to the undersigned to conduct all proceedings through the parties' consent pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 42).

**Claim 2:** **Eighth Amendment claim against Defendants Erin Nicholson, Dakota Brauninger, Carrie Morris, and Mary Wilson for their roles in failing to address the extreme isolation or lack of mental health care from August to December of 2024.**

(Doc. 10, pp. 3–7).

***Allegations in Plaintiff's Complaint***

On August 22, 2024, Gerken was admitted to Menard's Restrictive Housing Unit, also known as segregation, in the North 2 Cellhouse where he resided until December 11, 2024. (Doc. 36-1, p. 6, at ¶ 1). In the 111 days he was in segregation, he was not offered or given any yard or recreation time. (*Id.* at ¶ 2). Defendant Wills, Warden/Chief Administrative Officer, and Defendant McClanahan, Major of the North 2 Cellhouse, would conduct regular "tours" of Menard's segregation unit. (*Id.* at ¶¶ 3–6). During these tours, Gerken and other inmates asked the two Defendants why they were not getting any yard time. (*Id.*). Wills and McClanahan ignored Gerken's and others' complaints and kept walking. (*Id.* at pp. 6–7, ¶¶ 3–6). At the time of these events, the inmates in other cellhouses at Menard were getting yard and out-of-cell time, and the North 2 Cellhouse was the only one not getting that time. (*Id.* at p. 7, ¶ 7). Gerken filed a grievance on this issue in November of 2024, but the grievance was never processed. (*Id.* at ¶ 12).

At the time of these events, Gerken had been seeking mental health services for depression, anxiety, and PTSD for about seven years. (*Id.* at p. 8, ¶ 19). Also at the time of these events, somebody from Menard's mental health department, usually Defendants Nicholson or Brauninger, both behavior technicians at Menard, would do weekly rounds in segregation to check on inmate mental health statuses. (*Id.* at ¶¶ 17–18, 20). During those rounds, Gerken voiced his complaints about not getting any yard or any other out-of-cell time. (*Id.* at p. 9, ¶ 21). He stated that the extreme isolation he was experiencing was exacerbating a pre-existing medical condition in his back. (*Id.*

at p. 8, ¶ 14). Gerken identified Defendant Mary Wilson as the head mental health doctor at Menard and Defendant Carrie Morris as a mental health caseworker at Menard. (*Id.* at p. 8, ¶¶ 15–16). Every week, Gerken was told that his complaints would be forwarded to Nicholson's or Brauninger's boss to see what could be done, and that a staff shortage was the reason why there was no yard or groups. (*Id.* at p. 9, ¶ 22). Weeks passed and Defendants Wilson, Morris, Nicholson, and Brauninger did nothing to ensure that the inmates in segregation received out-of-cell time and mental health groups. (*Id.* at ¶ 23).

***Plaintiff's Grievance Record***

Travis Bayler, Chairperson for the Administrative Review Board ("ARB") in the office of Inmate Issues at the IDOC, signed a declaration stating that he searched for any appeals or grievances submitted to the ARB by Gerken between August 2024 and September 2024. (Doc. 62-3, p. 4, at ¶ 12). Specifically looking for grievances related to a denial of yard, he found that two of the total eight grievances submitted by Gerken in 2024 were relevant. (*Id.*). These were grievances filed on October 28, 2024 and December 6, 2024. (*Id.* at pp. 4–5).

Shane Gregson, a grievance officer at Menard, also signed a declaration stating that he searched for grievances submitted by Gerken at the facility level, for the period of August 2024 to December 2024. (Doc. 62-5, p. 5, at ¶ 12). Gregson stated that of the six grievances filed within this period, only one was potentially relevant (*Id.* at ¶ 13), which was a grievance filed on October 17, 2024,[2] #K4-1024-5669. (*Id.* at ¶ 13(a)). Gregson stated that Gerken filed the grievance regarding his mental health treatment and medication while in North 2 Restrictive Housing (*Id.*).

[2] The correct date for this grievance, #K4-1024-5669, is October 28, 2024. (Doc. 62-3, p.5, at ¶ 14); (Doc. 63, p. 5, at ¶ 12(b)).

This grievance was deemed emergent on November 4, 2024 and was returned to the Grievance Office for second level review where it was ultimately affirmed by the Warden on November 12, 2024. (*Id.*). The grievance was then returned to Gerken on November 13, 2024. (*Id.*).

In this grievance, #K4-1024-5669, Gerken alleged his psychotropic medication was discontinued on October 23, 2024, and that he had not been called to see telepsych since July 22, 2024, despite telling mental health that he needed to see them regarding issues with his medication (Doc. 62-3, p. 5, at ¶ 14). Gerken further alleged that since the discontinuation of his medication, he had been in a manic state, could not sleep, had been depressed, anxious, on edge, and believed his medication should not have been discontinued suddenly. (*Id.*).

According to Defendants' Undisputed Material Facts, this grievance named Menard and the IDOC Mental Health Department, but did not otherwise name or describe Defendants Wills, McClanahan, or Morris. (Doc. 63, p. 5, at ¶ 12(b)(iv)).[3] In looking to the actual grievance, Gerken did list Menard and the IDOC Mental Health Department but did not otherwise name or describe any of the named Defendants. (Doc. 62-2, pp. 43–44). On November 26, 2024 Gerken appealed this grievance to the ARB where it was denied on the merits as appropriately addressed by the facility Administration, and also because Gerken was transferred to Pontiac Correctional Center ("Pontiac") by the time the ARB received it. (Doc. 63, pp. 5–6, at ¶ 12(b)(vi)); (Doc. 70, p. 4).

In the grievance dated December 6, 2024, there was no attached grievance number. (Doc. 63, p. 4, at ¶ 12(a)). Gerken alleged he was suffering from neck and back pain due to not having a pillow or exercise, that the showers and gallery were unclean and smelled, that he had not gotten

[3] The remaining Defendants were not mentioned because at this point in the litigation, they had not yet joined the Motion for Summary Judgment.

any razors, and that he had only had two showers since being in segregation (Doc. 62-3, p. 4, at ¶ 12(a)(iii)–(v)). Gerken further alleged he received no yard time and as a result, was experiencing a diminishing impact on his mental and physical health. (Doc. 1, pp. 12–13). He requested the eight hours of recreation per week that he is supposed to receive, along with a pillow, three showers per week, razors, for 5 Gallery to be cleaned and mopped on a regular basis, for 5 Gallery showers to be cleaned as they should be, and to preserve camera footage from the front and back of 5 Gallery North 2 Cellhouse between August 22, 2024 and December 6, 2024. (*Id.*).

Defendants' Undisputed Material Facts states that this grievance did not name or otherwise describe Defendant Wills, McClanahan, or Morris. (Doc. 63, p. 4, at ¶ 12(a)(vi)). In looking to the actual grievance, Gerken did not provide any identifying information or otherwise name or describe any of the named Defendants. (Doc. 62-2, pp. 20–21). The ARB received this grievance on February 18, 2025 and returned it on March 13, 2025 because it was not submitted in the timeframe outlined in Department Rule 504, and therefore the issue would not be addressed further. (Doc. 1 at p. 14).

***Defendants' Motion for Summary Judgment***

On March 25, 2026, Defendants McClanahan, Morris, and Wills moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies before initiating this action. (Doc. 62). Regarding the unnumbered grievance dated December 6, 2024, Defendants argue that Gerken failed to exhaust administrative remedies because the grievance does not name or describe Defendants and because the grievance was not decided on the merits. (Doc. 63, pp. 8–9). Regarding grievance #K4-1024-5669 dated October 28, 2024, Defendants argue that Gerken failed to exhaust administrative remedies because he failed to name or describe Defendants. (*Id.*

at 9). The summary judgment motion includes a Statement of Material Facts with proper citation to the record in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1. (Doc. 63, pp. 2–6). Defendants also filed a Rule 56 Notice advising Gerken of the consequences of failing to respond to the motion. (Doc. 64). On May 5, 2026, the Court allowed Defendants Brauninger, Nicholson, and Wilson to join co-defendants' motion for summary judgment (Doc. 67).

On June 16, 2026, Gerken filed his response to Defendants' Motion for Summary Judgment. (Doc. 70). In his response, Gerken did not dispute any of the facts included in the Defendants' Statement of Material Facts. (*Id.*). Accordingly, the Court adopts Defendants' factual allegations to the extent supported by admissible evidence. FED. R. CIV. P. 56(e) (providing that if a party fails "to properly address another party's assertion of fact" the court can "consider the fact undisputed for purposes of the motion."); *see also* Local Rule 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed"). The Court still views those facts in the light most favorable to Gerken.

Gerken argued he made every effort possible to exhaust his administrative remedies before filing his complaint. (Doc. 70, pp. 6–7). He alleged that there was another grievance, dated November 22, 2024, related to his denial of yard time (*Id.* at 2), which he attached as "Exhibit A" to his response. (*Id.* at 8). Gerken claims that this grievance was never processed by Menard despite him placing it directly into the grievance box as required. (*Id.* at 3). Gerken also claims that this grievance did in fact name Defendant Wills and McClanahan, along with the Menard mental health staff. (*Id.*). The grievance attached as Exhibit A is dated November 22, 2024, and in it Gerken

complains about not having yard, specifically mentioning Defendant Wills and the North 2 Major. (*Id.* at 8). Gerken also references his complaints to mental health in this grievance but does not specifically name the relevant Defendants therein. (*Id.*).

Gerken alleged that it was only after not having received a response to this grievance that he filed the December 6, 2024 grievance. (*Id.* at 3). He concedes that he did not name the Defendants in the December 2024 grievance, but that this was because he was under the expectation his grievance from November 2024 would be processed. (*Id.*).

***Pavey Hearing***

Exhaustion must occur before the suit is filed, *Gutierrez v. Myers*, 2026 U.S. Dist. LEXIS 115826, at *4 (S.D. Ill. May 26, 2026) (citing *Chambers v. Sood*, 956 F.3d 979, 981 (7th Cir. 2020); *Williams v. Rajoli*, 44 F.4th 1041, 1043 (7th Cir. 2022)), and "the exhaustion requirement is an affirmative defense which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). An evidentiary hearing pursuant to *Pavey* was held on October 5, 2026. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 2008), *and abrogated by Perttu v. Richards*, 605 U.S. 460 (2025).[4] (Doc. 73). At this hearing, all three relevant grievances were discussed (10/28/2024, 11/22/2024, and 12/6/2024).

Regarding the October 28, 2024 grievance, Gerken conceded that the mental health staff Defendants (Morris, Nicholson, Wilson, and Brauninger) were not specifically named. He contended that he brought this issue up again in the unprocessed November 22, 2024 grievance.

[4] This case does not implicate *Perttu* because Plaintiff has not argued that his attempts to exhaust his administrative remedies were hindered by Defendants' unconstitutional conduct as alleged in the Complaint.

Counsel for the mental health staff Defendants argued that because Morris, Nicholson, Wilson, and Brauninger were not named, Gerken did not sufficiently exhaust his administrative remedies before filing suit. Counsel further argued that even if the November grievance had been processed, Gerken was not in compliance with IDOC procedure requiring him to provide names or descriptive details of who he was describing in his grievance.

Gerken claimed he wrote the December grievance on December 6, 2024, but that he was unable to put it into the grievance box or otherwise submit it at Menard before being transferred. Gerken had to file a separate grievance at Pontiac in order to get access to the grievance and his other legal work. Gerken stated the December 6, 2024 grievance concerned both the mental health staff Defendants (Morris, Nicholson, Wilson, and Brauninger) and the IDOC Defendants (Wills and McClanahan), but admitted that he did not properly identify the Defendants within the grievance. Gerken testified he was under the impression that his November grievance would be processed and that this was why he did not think it necessary to rename the Defendants in the December grievance. Gerken referenced the November grievance attached to his Response to the Motion for Summary Judgment, which he explained was a true copy of the original. In this copy, Gerken identified Defendants Wills and the North 2 Major.

Gerken stated he submitted the November grievance according to the normal procedure by dropping it into the grievance box. He stated this was the main method to submit grievances in segregation at Menard, and that he was not sure if there was any other official way to deposit them. Officers would come around during the last round at night to gather grievances or whenever they felt like it. Gerken stated it was not usually a specific day, but rather by request, and that if nobody asked to submit a grievance, then the officers likely would not bring the grievance box by at all.

Gerken testified that on November 22, 2024, the grievance box was carried around in segregation and that he submitted his into the box. He said he never got a receipt for it, and he did not attempt to submit it to the ARB or after his transfer to Pontiac.

Counsel argued that because Wills and McClanahan were not named in the October and December grievances, Gerken did not sufficiently exhaust his administrative remedies before filing suit. Counsel further argued that the December 2024 grievance was the only one that made it up to the ARB, that it was denied for being untimely, and that it was not adjudicated on the merits. Counsel finally argued that Gerken admitted he has read the IDOC handbook, and thus has access to the proper grievance instructions, but that he still did not follow procedures.

Finally, the Court questioned Gerken on why in his original Complaint, he did not mention this alleged November 22, 2024 grievance. Gerken stated this was because he was not sure if it was allowed to mention an unprocessed grievance and that he was attempting to go off of official records in his filing.

## Analysis

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to and draws all reasonable inferences in favor of the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey*, 544 F.3d at 742.

***Exhaustion Requirement***

Under the Prison Litigation Reform Act ("PLRA"), prisoners are required to exhaust available administrative remedies before filing lawsuits in federal court. 42 U.S.C. § 1997e(a). To comply with the PLRA exhaustion requirement, an inmate must follow the prison's grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

"[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the IDOC must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem to his or her institutional counselor unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). "The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* § 504.810(c). An inmate who does not know the names of individuals involved in the complaint must include as much descriptive information about the individual as possible. *Id.*

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the CAO — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id.* § 504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.* An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a final decision. *Id.* § 504.850(a); *see also Dole*, 438 F.3d at 806–07. "The appeal must be received by the [ARB] within 30 days after the date of the decision." *Id.* The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is

handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may further submit certain types of grievances directly to the ARB, including grievances related to protective custody, involuntary administration of psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

Further, the Seventh Circuit has explained that, to satisfy its purpose and comply with the PLRA requirements, the grievance must contain sufficient information to allow prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). A grievance does not comply with the PLRA requirements when it does not raise the same claim as the lawsuit and does not provide sufficient information from which to infer that the defendants are the targets. *Brown v. Briggs*, No. 22-1963, 2023 WL 3674669, at *2 (7th Cir. May 26, 2023). Such a disconnect between a grievance and the complaint deprives the federal courts of jurisdiction to hear the claims. *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021); *see also Shipp v. Lobenstein*, No. 23-1923, 2023 WL 8868501, at *2 (7th Cir. Dec. 22, 2023) ("To exhaust remedies, a prisoner must follow the prison's administrative rules, . . . including the level of detail required by them[.]"). Still, failing to name the defendants in a grievance is "a mere technical defect" where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

Moreover, the PLRA exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (quoting *Ross v. Blake*, 578

U.S. 632, 642 (2016) (alteration in original)). The administrative process becomes “unavailable,” for instance, when prison officials fail to respond to a prisoner’s grievance, thus preventing that prisoner from exhausting administrative remedies. *Dole*, 438 F.3d at 809.

## Discussion

***Count 1 Against Defendants Wills and McClanahan***

Count 1 against Defendants Wills and McClanahan is addressed in the unprocessed November 22, 2024 grievance and the December 6, 2024 grievance. For the reasons explained below, Gerken exhausted his administrative remedies as it pertains to Count 1, as the Court finds Gerken’s description of his attempts to exhaust his November 22, 2024 grievance credible, making the grievance process unavailable.

***November 22, 2024 Grievance***

*Filing of Grievance*

In their Motion for Summary Judgment (Doc. 62), Defendants provided a grievance log, which notably does not list the November, 22, 2024 grievance (Docs. 62-2, p.1); (Doc. 62-4). Defendants also provided sworn declarations by Travis Bayler and Shane Gregson on what grievances were relevant, and neither referenced the November 22, 2024 grievance. (Docs. 62-3, 62-5). Still, prison employees bear the burden on exhaustion and they must do more than point to a lack of evidence in the record. *Smallwood v. Williams*, 59 F.4th 306, 319 (7th Cir. 2023) (citing *Schaefer v. Bezy*, 336 F. App'x 558, 560 (7th Cir. 2009) (nonprecedential decision)). Rather, prison employees must “‘establish affirmatively’ that the evidence is so one-sided that no reasonable factfinder could find that [the prisoner] was prevented from exhausting his administrative remedies." *Id.* (quoting *Schaefer*, 336 F. App'x at 560).

When a court is "faced with an allegation that remedies were unavailable, [it] may still grant summary judgment on exhaustion grounds if it determines that there are no genuine disputes of material fact, and, viewing the facts in the light most favorable to the nonmovant, the defendants satisfied their burden to show that remedies were available to the nonmovant as a matter of law." *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (citing *Smallwood*, 59 F.4th at 318). However, Gerken has pointed to evidence, through the copy of the November 2024 grievance, "suggesting that the prison unjustifiably failed to process all of his grievances." *Id.* Although Defendants presented evidence that the grievance was not received, they have not presented evidence to call into question the credibility of Plaintiff's testimony that he deposited the grievance in the grievance box. This therefore raises a genuine dispute about whether administrative remedies were unavailable for the issues raised in those grievances, making summary judgment improper. *Id.*

*Naming requirement*

Illinois requires inmates to name each person involved in their complaint, and if he does not know a name, then he must describe the person as fully as possible. 20 ILL. ADMIN. CODE § 504.810(c). An inmate must provide sufficient information to "fulfill a grievance's function of giving prison officials a fair opportunity to address an inmate's complaints, not provide a particular official with personal notice that he may be sued." *Stinde v. Brown*, 2026 U.S. Dist. LEXIS 21361, at *19 (S.D. Ill. Feb. 2, 2026) (citing *Maddox*, 655 F.3d at 722; *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

In his November 22, 2024 grievance, Gerken named Defendant Wills as "Warden Wills" and Defendant McClanahan as the "North 2 Major." Gerken's reference to Defendant Wills is clearly sufficient. Referring to Defendant McClanahan as the "North 2 Major" is also sufficient

because this was the formal job title he held and is enough to identify him as the targeted Defendant. *See Stinde*, 2026 U.S. Dist. LEXIS 21361, at *20 (Court noted that the plaintiff failed to name the defendant specifically or generally, and that he offered no description by physical appearance, job title, job description, or otherwise that would have satisfied the requirement); *Mann v. Burns*, 2015 U.S. Dist. LEXIS 2568, at *17, n. 3 (S.D. Ill. Jan. 9, 2015) ("[p]laintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.)). Therefore, a grievance is "sufficient to exhaust a claim if it raises the same claim as the lawsuit and provides enough information to indicate the defendant is the target." *Young v. Hughes*, 2026 U.S. Dist. LEXIS 189266, at *13–14 (citing *King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023)).

The evidence also shows that Defendant McClanahan was the working North 2 Major during the relevant timeframe and was actively involved in the grievance process. *Compare Stinde*, 2026 U.S. Dist. LEXIS 21361, at *20 (Court discussed how the exhaustion requirement was not satisfied because besides plaintiff not naming defendant in a specific or general capacity, defendant also was not implicated in any of plaintiff's pain treatment during the relevant time period, and all other facts suggested her involvement in plaintiff's care was limited). In Gerken's November grievance, he stated: "Every time Warden Wills and the North 2 Major do their gallery tours I try to ask them why we are not getting any yard but they never respond to me they just keep walking." (Doc. 70, p. 8); *compare Rosa v. Wills*, 2026 U.S. Dist. LEXIS 216750, at *11 (S.D. Ill. Sept. 23, 2026) (one of the reasons plaintiff's grievances were insufficient was because they did not fault the defendant for any specific act or omission).

Moreover, on August 4, 2025 and August 12, 2025, Gerken filed Supplemental Notices

providing information to the Court on the John Doe defendant. (Docs. 16, 21). Gerken mentioned how John Doe worked as "The Major in the North 2 cellhouse (segregation) on the 7am – 3pm shift between the dates of August 22, 2024 and December 11, 2024 in Menard Correctional Center." (*Id.*). The Court ordered Defendant Wills to review this information and provide responsive information on the identity of John Doe. (Doc. 33). On October 7, 2025, Wills filed a Notice stating that Major McClanahan "was assigned to work the 7 a.m. to 3 p.m. shift in the North 2 Cellhouse during the relevant timeframe mentioned by Plaintiff." (Doc. 35). While Gerken did not mention these details in his original grievance, according to this later provided information, it seems likely that McClanahan still would have known that he was the North 2 Major back when the grievance was filed. Thus, the grievance sufficiently alerted Defendant McClanahan as the intended target.

***December 6, 2024 Grievance***

As the Court has found that Plaintiff's administrative remedies were unavailable with regard to his November grievance, there is no need to address his December grievance as it pertains to Defendants Wills and McClanahan. It is important to note, however, that at the hearing, Gerken claimed that the December 6, 2024 grievance concerned all the named Defendants. Yet, looking at the December grievance, Gerken did not name or describe any of the mental health staff defendants. (Doc. 1, pp. 12–13). Plaintiff acknowledged this at the hearing. Therefore, the December grievance, even if exhausted, did not serve to exhaust Plaintiff's remedies with regard to Defendants Morris, Nicholson, Wilson, or Brauninger

***<u>Count 2 Against Defendants Morris, Nicholson, Wilson, and Brauninger</u>***

Count 2 against Defendants Morris, Nicholson, Wilson, and Brauninger is addressed in the

October 28, 2024 grievance. For the reasons explained below, Gerken did not exhaust his administrative remedies through this grievance.

As discussed, the Illinois Code imposes a requirement that inmates name those involved in their complaints. 20 ILL. ADMIN. CODE § 504.810(c). However, "where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox*, 655 F.3d at 722.

A missing name does not necessarily defeat exhaustion when the prison decides the grievance on the merits and can tell who is responsible. *Torres v. Hanna*, 2026 U.S. Dist. LEXIS 215464, at *11 (S.D. Ill. Sept. 22, 2026) (citing *Maddox*, 655 F.3d at 721–22). When submitting a grievance, an inmate is not expected to know the innerworkings of the healthcare operations or who exactly was responsible or at fault for the issues. *Adamcyk v. Vinyard*, 2026 U.S. Dist. LEXIS 61196, at *15 (S.D. Ill. Mar. 23, 2026) (citing *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) ("it would be unreasonable to expect that, for every set of facts, an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision."); *Dawson v. Baldwin*, No. 19 C 50058, 2021 U.S. Dist. LEXIS 166976, 2021 WL 3917023, at *7 (N.D. Ill. July 30, 2021) (noting that the grievance process is "silent regarding what happens when the inmate is not necessarily complaining about a specific person or when the inmate has no idea who is responsible for the problem")).

Nonetheless, if an inmate fails to mention by name or provide *any* identifying information that indicates the defendant, then they have failed to exhaust. *Hilliard v. Clark*, 2026 U.S. Dist. LEXIS 36255, at *9 (N.D. Ill. Feb. 23, 2026) (citing *Roberts v. Neal*, 745 F.3d 232, 234–36 (7th

Cir. 2014) (failing to identify the target of a grievance is a fatal defect); *Barrow v. Wexford Health Sources*, Inc., 793 F. App'x 420, 423 (7th Cir. 2019) ("Barrow did not exhaust his remedies with respect to Dr. Trost because he did not name the doctor in any grievance submitted before he commenced this lawsuit").

In *Maddox v. Love*, the Seventh Circuit explained that the exhaustion requirement is meant to provide prison officials with a chance to address inmate complaints internally, rather than to serve as a procedural trap that bars meritorious claims. *Padilla v. Wills*, 2026 U.S. Dist. LEXIS 215465, at *9 (S.D. Ill. Sept. 22, 2026) (citing *Maddox*, 655 F.3d at 722). In *Maddox*, an inmate submitted a grievance concerning the cancellation of religious services but did not name or describe the chaplain and wardens that he later sued. *Torres*, 2026 U.S. Dist. LEXIS 215464, at *11 (citing, *Maddox*, 655 F.3d at 714, 721). The officials involved denied Maddox's grievance on the merits at every stage and never told him it was procedurally deficient. *Id.* (citing *Maddox*, 655 F.3d at 721).

The Seventh Circuit noted that a procedural shortcoming defeats exhaustion "only if prison administrators explicitly relied on that shortcoming." *Id.* (quoting *Maddox*, 655 F.3d at 722). The Court also noted that the administrators in *Maddox* plainly knew who made the decision, in that the chaplain responded to the grievance, and a warden denied it. *Id.* (citing *Maddox*, 655 F.3d at 722). As such, the *Maddox* grievance "served its function of alerting the state and inviting corrective action," and the missing names were "a mere technical defect." *Id.* at 11–12 (quoting *Maddox*, 655 F.3d at 722).

Yet, Gerken's grievance is not like the one in *Maddox*. This was not a situation in which despite there being a lack of specific identification in the grievance itself, the ARB still responded

with an understanding of who exactly was being targeted. *See, e.g.*, *Padilla*, 2026 U.S. Dist. LEXIS 215465, at *10–11 (Menard denied grievances relying on administrative directives, one of which expressly put the decision to restrict recreational time at the discretion of one of the defendants); *Torres*, 2026 U.S. Dist. LEXIS 215464, at *12 (plaintiff grieved that he repeatedly told medical and dietary staff about his allergy, and the grievance officer did not reject for failing to name anyone, but rather investigated and contacted one of the defendants in response); *Chaney v. Wall*, Case No. 19-cv-357-DWD, 2020 U.S. Dist. LEXIS 220073, at *4 (S.D. Ill. Nov. 24, 2020) (grievance with a description of an unnamed nurse's work schedule was sufficient but a grievance lacking descriptors like dates or behavior of officers involved was insufficient); *Williams v. Luking*, 2023 U.S. Dist. LEXIS 9595, at *11–13 (S.D. Ill. Jan. 19, 2023) (grievance including specific details about the incident, including various actions/inactions, was enough to alert the prison that the quality of plaintiff's medical care was at issue and would arguably cause the prison to identify the staff member working at that time by, for example, consulting the work schedule).

Here, in the mental health grievance dated October 28, 2024 (#K4-1024-5669), the only sort of identifying statement Gerken made is describing those involved as "The Mental Health Department" and "Menard C.C." The ARB response on November 6th, 2024 stated as follows:

> Grievance #K4-1024-5669 was received on 10/31/2024 and marked emergency by the Individual in Custody. It was deemed of emergency nature by the Warden on 11/01/2024 and returned to the Grievance Office for processing on 11/04/2024.
>
> Pharmacy was contacted, they advised the medication expired on 10/22/2024 due to no renewal being issued.
>
> The Mental Health Department was contacted due to the grievance content. They advised there is currently an extensive backlog and the Individual will be scheduled with a priority to renew medication.

In its response on November 6, 2024, The ARB did not mention any specific defendant or

mental health professional, but rather generally stated "The Mental Health Department" and "Pharmacy." Additionally, in the response to the appeal to the Director on December 19, 2024, there also was no mention of any specific individuals involved. (Doc. 62-2, p. 41). Rather, all the response stated is: "Grieves having psychotic medication, Remeron, discontinued on 10/23/24; grieves needing mental health attention" and "Grievant has since transferred since the filing of this grievance, submit any medical concerns at your current facility. Records reflect the grievant has access to healthcare and has had call passes for mental health since this grievance was filed." (*Id.*). These general statements do not indicate that the ARB or the Director knew that Gerken was addressing Morris, Nicholson, or Brauninger in his grievance.

Accordingly, the Court finds that Gerken failed to exhaust the available administrative remedies on Count 2 before initiating this action. Therefore, Defendants Morris, Nicholson, Wilson, and Brauninger are entitled to summary judgment.

**Conclusion**

For these reasons, Defendants' Motion for Summary Judgment on the Issue of Exhaustion (Doc. 62) is **GRANTED in part and DENIED in part**. Count 2 of the Complaint against Defendants Morris, Nicholson, Wilson, and Brauninger is **DISMISSED without prejudice**. Plaintiff survives summary judgment as to Count 1 of the Complaint against Defendants Wills and McClanahan. The Clerk of Court is **DIRECTED** to terminate Defendants Morris, Nicholson, Wilson, and Brauninger and enter judgment in accordance with this Order at the close of this case.

**IT IS SO ORDERED.**

**DATED: October 21, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**